**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chambala J. Hollis,<br><br>    Plaintiff,<br><br>v.<br><br>Randstad North America Incorporated, *et al.*,<br><br>    Defendants. | No. CV-25-02144-PHX-JJT<br><br>**ORDER** |

At issue is *pro se* Plaintiff Chambala J. Hollis's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2). Having determined that Plaintiff does not have the means to pay the Court's fees in this case, the Court will grant the Application. However, as set forth below, upon screening Plaintiff's Complaint (Doc. 1, Compl.) pursuant to 28 U.S.C. § 1915(e)(2), the Court finds that the Complaint fails to state many of the claims raised. The Court therefore dismisses most of the Complaint with leave for Plaintiff to file an Amended Complaint if he can cure the pleading defects identified in this Order.

**I. LEGAL STANDARDS**

 **A. 28 U.S.C. § 1915(e)(2)**

For cases in which a party is permitted to proceed *in forma pauperis*—that is, the party lacks the means to pay court fees—Congress provided that a district court "shall dismiss the case at any time if the court determines" that the "allegation of poverty is untrue" or that the "action or appeal" is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from

such relief." 28 U.S.C. § 1915(e)(2). Section 1915(e) applies to all *in forma pauperis* proceedings. *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). "It is also clear that section 1915(e) not only permits but requires a district court to dismiss an *in forma pauperis* complaint that fails to state a claim." *Id.* at 1127.

### B.    Federal Rule of Civil Procedure 8

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II.    ANALYSIS

In the Complaint, Plaintiff alleges the following. In April 2025, Defendant Randstad North America, Inc.—a staffing company—placed him to work the Thursday to Monday schedule at a warehouse operated by Defendant GXO Logistics Supply Chain, Inc. (Compl. at 4–5.) In the approximately 10 days he worked at GXO before his termination, he "[a]s a Black employee . . . was denied access to required safety and other training while non-Black agency employees were granted access using company equipment to train." (Compl. at 6.) Specifically, although Plaintiff saw a Caucasian employee log out of the training laptop so that a Hispanic employee could start her safety training videos, Plaintiff did not get access to a training laptop during his first or second week of work. (Compl. at 10.) His supervisor, Kristopher Whalen, explained "either, 'There isn't enough laptops, or wait until next week or he needs to order more laptops." (Compl. at 11.)

Around April 28, Plaintiff was assigned to the outbound/inbound dock area, supervised by Christopher Garcia, and issues arose. (Compl. at 8.) Plaintiff used a broom

handle to remove plastic from Google data racks, and Garcia confronted Plaintiff, accusing him of damaging the plastic wrapping and ripping wires on the data racks. (Compl. at 8 & nn.1, 3.) Plaintiff did not agree that this method was inappropriate because Whalen "permitted all employees to use our best judgment to improvise certain work duties as long as we wear [Personal Protective Equipment]." (Compl. at 8.) Plaintiff alleges the machines themselves were not damaged and "the 8 data racks were taken up to the data center on the 2nd floor for soft replacement." (Compl. at 8 n.3.) But Whalen and Garcia reported the resulting confrontation to the Randstad account manager, Ashlee Morales, and Plaintiff was terminated. (Compl. at 9.) Whalen and Garcia announced that Plaintiff was fired because he "cursed them out," "use[d] a broom handle and tore or damaged the wires from the new Google Data Racks and refused to work" (Compl. at 10), some of which Plaintiff alleges is false (Compl. at 8). After his termination, Whalen and Garcia downloaded video of Plaintiff's work to "use[] as a training/what not to do video." (Compl. at 11.) When Plaintiff returned to Randstad's office to seek other employment, a Randstad employee told Plaintiff he "can no longer work for Randstad again based upon false accusations of the client." (Compl. at 7.)

Plaintiff has now filed this suit raising claims against GXO and Randstad of racial discrimination and retaliation under 42 U.S.C. § 1981, defamation under the "First Amendment of the U.S. Constitution and Arizona Law," and "breach of contract/implied covenant of good faith/and negligence." (Compl. at 11–15.) Plaintiff seeks $50 million in damages and $5 million in punitive damages. (Compl. at 3.)

### A. Section 1981 Claim

A section 1981 suit requires a plaintiff to allege facts supporting a showing that racial discrimination by each defendant was the but-for cause of his alleged injury. *See Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*, 140 S.Ct. 1009 (2020). Here, Plaintiff alleges he suffered damages resulting from his termination by GXO as well as Randstad's later refusal to place him in other employment. But the Complaint contains no facts raising an inference that his termination by GXO or refusal to rehire by Randstad

- 3 -

were based on his race. While Plaintiff alleges he witnessed non-Black employees engaging in training at GXO while he was not yet able to complete his training, his alleged injuries are unrelated to his lack of access to training during his first two weeks of work at GXO. Moreover, the temporary lack of access to training by itself is not sufficient to constitute a hostile work environment. As for the employers' alleged actions—termination and refusal to rehire—that resulted in his alleged injury, Plaintiff cannot state a section 1981 claim by simply alleging he is Black and Defendants terminated him and then failed to rehire him, even if he thinks the termination was not warranted. The pleading standard requires Plaintiff to allege sufficient facts showing that his race was the but-for cause of his termination and the refusal to rehire. *See Twombly*, 550 U.S. at 555. Plaintiff thus fails to state a section 1981 discrimination claim.

As for the retaliation claim, a plaintiff can establish a *prima facie* case of retaliation by alleging facts showing that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). An employee engages in protected activity when he opposes conduct that he reasonably believes to be an unlawful employment practice, here under section 1981. Again, the Complaint contains no factual allegations that Plaintiff engaged in conduct to oppose an action by his employers that he reasonably believed was an unlawful practice of racial discrimination. In the Complaint, he alleges only that Human Resources failed to investigate the reports of Whalen and Garcia as to the confrontation regarding his work at the inbound/outbound dock (Compl. at 11–12), not facts showing that they retaliated after he engaged in an activity protected under section 1981. As a result, Plaintiff also fails to state a section 1981 retaliation claim.

### B.     Defamation

Plaintiff brings a defamation claim based on Whalen and Garcia's alleged use of video of him in their "training/what not to do video," as well as on their reports to Morales and on Morales's report to a coworker that Plaintiff engaged in improper conduct both on

the job and during the subsequent confrontation. (Compl. at 11, 13.) To begin with, Plaintiff cannot state such a claim under the First Amendment. The Constitution protects the rights of citizens against infringement by the government, not a private employer. Plaintiff's constitutional claim thus fails as a matter of law.

Under Arizona law, "[o]ne who publishes a false and defamatory communication concerning a private person . . . is subject to liability if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard to these matters, or (c) acts negligently in failing to ascertain them." *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007) (internal quotations and citation omitted). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Reynolds v. Reynolds*, 294 P.3d 151, 155 (Ariz. Ct. App. 2013) (quoting *Turner v. Devlin*, 848 P.2d 286, 288–89 (Ariz. 1993)). A statement is false where it "reasonably appear[s] to state or imply assertions of objective fact" that are actually untrue. *Yetman v. English*, 811 P.2d 323, 328 (Ariz. 1991). Plaintiff's allegations that Whalen and Garcia showed a video of him working, without more, cannot raise the inference of falsity, because the video is not itself untrue. Accordingly, Plaintiff fails to state a claim of defamation under state law on the basis of the video.

As for Whalen and Garcia's report to Morales of Plaintiff's conduct at the inbound/outbound dock—the content of which Plaintiff asserts is false—Plaintiff has not named Whalen or Garcia as Defendants in this matter. The factual allegations are sufficient for Plaintiff to plausibly state a theory of vicarious liability against GXO based on Whalen and Garcia's report to Morales, an employee of Randstad. However, regarding Morales's subsequent report to a coworker, Plaintiff has also not named Morales as Defendant, and he cannot proceed against her employer, Randstad, on a theory of vicarious liability for statements she made to a coworker in the context of work. Therefore, for the purpose of the Court's screening under 28 U.S.C. § 1915(e)(2), Plaintiff has only stated a defamation claim against GXO for Whalen and Garcia's report to Morales.

### C. Breach of Contract/Implied Covenant of Good Faith and Negligence

Lastly, Plaintiff brings an omnibus breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence claim based on an alleged "employment agreement with [Staffing Agency Name]" [sic]. (Compl. at 14.) Plaintiff does not include a copy of the alleged employment agreement with the Complaint, nor does he allege what provision of the contract was breached with any specificity. Indeed, Plaintiff does not allege if the employment agreement contains a provision regarding what law applies to enforcement of the agreement or a provision for the proper venue to resolve disputes under the agreement—whether this Court, another, or an arbitral forum. Plaintiff thus fails to state a breach of contract or bad faith claim.

As for negligence, under Arizona law, an employee may bring an action in negligence against his employer for termination, or refusal to rehire, only if such action is "for bad cause," that is, "one against public policy articulated by constitutional, statutory, or decisional law." *Mack v. McDonnell Douglas Helicopter Co.*, 880 P.2d 1173, 1175 (Ariz. Ct. App. 1994). As stated above, Plaintiff has not alleged facts sufficient to show that Defendants' termination and refusal to rehire were acts against public policy articulated by the law. Instead, Plaintiff has alleged that he was fired after a supervisor disapproved of his work and they had a confrontation in which Plaintiff disagreed—with a level of intensity the two dispute—that his work was deficient. Allegations of such a dispute do not rise to the level of bad cause sufficient to bring a negligence claim.

### D. Leave to Amend

For the purpose of the Court's screening of the Complaint under 28 U.S.C. § 1915(e)(2), Plaintiff has stated only a claim for defamation against GXO for its employees' statements to Randstad's employee. If a defective complaint can be cured, the plaintiff is entitled to amend the complaint before the action is dismissed. *See Lopez*, 203 F.3d at 1130. Therefore, the Court will give Plaintiff an opportunity to file an Amended Complaint if he so chooses, but it must adhere to the guidance provided in this Order and conform to the requirements of the Federal Rules of Civil Procedure.

1  **IT IS THEREFORE ORDERED** granting Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2).

**IT IS FURTHER ORDERED** dismissing all the claims in Plaintiff's Complaint (Doc. 1) except the defamation claim under Arizona law against Defendant GXO Logistics Supply Chain, Inc. Under Federal Rule of Civil Procedure 4, Plaintiff may serve GXO Logistics Supply Chain Inc. with the Complaint and Summons and shall also serve this Defendant with a copy of this Order. Because the Court is dismissing all of Plaintiff's claims against Defendant Randstad North America Inc., Plaintiff may not serve it with the Complaint.

**IT IS FURTHER ORDERED** granting Plaintiff leave to file an Amended Complaint by **July 14, 2025**, if he can cure the defects in the balance of his claims as detailed in this Order. Plaintiff may not serve any Amended Complaint on Defendants until the Court screens the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Dated this 25th day of June, 2025.

Honorable John J. Tuchi
United States District Judge